UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.   3:11-CR-139-TAV-DCP-1 |
| WILLIAM LAMAR BOST, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motions for compassionate release [Docs. 66, 67]. Federal Defender Services have filed supplements to defendant's pro se motions [Docs. 86, 87], and the United States has responded to both the pro se motions and the Federal Defender's supplements [Docs. 68, 88]. The matter is now ripe for adjudication. For the reasons set forth more fully below, the defendant's motions will be **GRANTED**.

## I.   Background

On January 11, 2013, defendant pleaded guilty to one count of possession with intent to distribute 28 grams or more of cocaine base and a quantity containing a detectable amount of cocaine [Docs. 39, 45]. Defendant, who was deemed a career offender, received a sentence of 262 months imprisonment [Doc. 51]. At the time of filing the pro se motions, defendant was located at FCI Butner Low [Doc. 66], but in November 2020 was moved to FCI Oakdale II [Doc. 88].

The Bureau of Prisons reports 119 active cases of COVID-19 amongst the inmates and fourteen (14) active cases amongst the staff at FCI Oakdale II. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021). Defendant, who is forty (40) years old and suffers from, among other ailments, type 2 diabetes and hypertension [Doc. 72 at 4], is scheduled for release on June 9, 2030. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 26, 2021).

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant requests relief under § 3582(c)(1)(A)(i) [Doc. 86].

Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, *16-17 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry

3

and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9.

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Defendant states that on April 30, 2020, he submitted a request for a reduction in sentence to the warden of FCI Butner Low and received a denial of that request on May 13, 2020 [Doc. 67 at 4], thus satisfying the exhaustion requirement. The United States concedes that the exhaustion requirement has been met [Doc. 68]. Thus, the Court may consider the merits of defendant's request.

#### B. Whether Extraordinary and Compelling Reasons Justify Relief

The exhaustion requirement having been satisfied, the Court must next consider whether a sentence reduction is warranted by "extraordinary and compelling reasons." Because defendant moves for compassionate release on his own behalf, the policy statement set forth in section 1B1.13 of the Federal Sentencing Guidelines is

4

"inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *United States v. Jones*, 980 F.3d 1098, *19 (6th Cir. 2020). Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite providing specific guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release if the inmate suffers from a medical condition identified as a risk factor for COVID-19. *See Jones* at *2 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it).

Here, the government concedes that defendant's health condition, type 2 diabetes, has been recognized by the CDC as increasing the risk of severe illness from COVID-19, which could constitute "compelling and extraordinary circumstances" [Doc. 88]; *see also* People at Increased Risk: People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed January 26, 2021). The Court also notes that, according to the government's brief, as of January 8, 2021, FCI Oakdale II had zero inmate

5

cases of COVID-19 and thirteen (13) staff cases [Doc. 88 at 4]. As of January 26, 2021, the Bureau of Prisons reports 119 active cases of COVID-19 amongst the inmates and fourteen (14) active cases amongst the staff at FCI Oakdale II. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021). In light of the clear surge in COVID-19 cases at FCI Oakdale II, coupled with the defendant's specific medical conditions, the Court finds that defendant has established "compelling and extraordinary circumstances."

### C. § 3553(a) factors

At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, *16-17 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491. In this instance, the United States does not offer opposition to defendant's request, but instead

6

"defers to the Court's discretion whether a sentence reduction is appropriate" [Doc. 88 at 4]. The Court will address, in turn, each of the factors pertinent to this case.

Turning to the first factor, the nature and circumstances of the offense, defendant pleaded guilty to possession with intent to distribute 28 grams or more of cocaine base and a quantity containing a detectable amount of cocaine [Docs. 39, 45]. Specifically, when arrested, defendant had in his possession 81.7 grams of cocaine base and 73.02 grams of powdered cocaine [Doc. 63 at 16]. The Court finds that this offense was serious, as was reflected by the 262-month sentence the Court imposed. Given the serious nature of the offense, the Court does not lightly consider granting the defendant's request for compassionate release, but, as discussed more fully below, the factors ultimately weigh in favor of the defendant.

Next, the Court must consider the history and characteristics of the defendant. The Court found during sentencing that "Defendant is described as an excellent father, a good-hearted person, with a good work ethic" [*Id.*]. Numerous letters were submitted by family and friends in support of the instant motion, reflect the continuing support of those closest to the defendant [Doc. 86, Ex. 8 – 16]. One of those letters indicates that defendant will have a job if he is released from prison, which would greatly assist the defendant in transitioning from incarceration to becoming a productive member of the community [Doc. 86, Ex. 8]. Although at sentencing defendant had no reported health problems [Doc. 63 at 17], over the intervening years he has been diagnosed with type 2 diabetes and hypertension, and is on medication for both [Doc. 72 at 4].

7

At sentencing, the Court noted defendant has some history of alcohol and or substance abuse [Doc. 63 at 17] and the Court recommended that defendant take part in the Bureau of Prison's 500-hour substance abuse program [Doc. 51 at 2]. While serving his term of imprisonment, defendant completed a drug education program, but opted out of taking the 500-hour program [Doc. 86-7]. Defendant's counsel states that defendant had no disciplinary issues since being incarcerated in 2011, has completed numerous education courses while incarcerated, and serves or served on a work detail performing landscaping [Doc. 86 at 15 and Ex. 7]. Courts have found that good disciplinary records and participation in prison educational programs are factors which should be considered when considering sentence reductions. *United States. v. Ladson*, 2020 WL 3412574, at * 8 (E.D. Pa. June 22, 2020) (a good "disciplinary record in prison bears on this [sentence reduction] assessment and is illustrative of character," and courts should "consider the inmate's participation in prison programming in tandem with the inmate's disciplinary record").

In considering these positive factors, the Court is also cognizant of defendant's significant past criminal history, consisting of several drug charges, which resulted in his being designated a career offender. [*See* Presentence Investigation Report at ¶¶ 35-47]. The Court also notes that defendant committed the offense which led to his current term of incarceration while on supervised release for another federal drug conviction [*Id*. at ¶ 66]. However, while the defendant has faced several drug charges, and previously violated his conditions of supervised release, he does not have a history of violent crime, and his

8

disciplinary record — or rather the lack thereof — while incarcerated weighs significantly in his favor.

Turning to the next factor, the need for the sentence imposed, the Court has already noted the serious nature of the offense. The 262-month sentence the Court imposed was intended to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, as well as to provide adequate deterrence to criminal conduct, protect the public from future crimes by the defendant, and to provide defendant with training and/or treatment. As the Court discusses further below, while the defendant has not served his entire sentence, the Court finds that, based on the specific facts and circumstances of this case, the time defendant has served adequately satisfies this factor. In reaching this decision, the Court notes that the Bureau of Prison's records classify defendant as a low risk for recidivism [Doc. 86 Ex. 4].

The next two factors to consider, the kinds of sentences available and the guideline range, were both taken into account when the Court sentenced defendant to a sentence of 262 months imprisonment out of a guideline range of 262 months to 327 months [*Id*. at 14]. Thus, while the Court found (and still finds) that the defendant had committed a serious offense, the Court found that a sentence at the bottom of the guideline range was appropriate. Defendant has served approximately 110 months, and, and based on credit received for good conduct, defendant has an anticipated release date of June 9, 2030, leaving a term of approximately 113 months remaining on his sentence, meaning, with good conduct time, defendant has served approximately half of his 262-month sentence.

The amount of time defendant has already served leads to the next factor, the need to avoid unwarranted sentencing disparities. While defendant has only served approximately half of the sentence this Court imposed, he has still served a significant amount of time, approximately 110 months, and, as noted above, during that time defendant has been a model inmate and has taken advantage of the resources the Bureau of Prisons offers to help better himself through educational programs and work detail opportunities. Defendant's exemplary behavior, coupled with the compelling and extraordinary circumstances found above, support a reduction in sentence. Thus, while there is an obvious disparity created by granting approximately a 50% reduction in defendant's sentence, based on the facts and circumstances of this case, that disparity is warranted.

In considering defendant's request for compassionate release, the Court also takes into account the extensive release plan defendant has developed to support his reentry into society. Defendant will live with his fiancée, his daughter, and the daughter of his fiancée [Doc. 86 at 17]. Defendant has a job awaiting his release, and his employer is aware of, and will work with, any limitations created by defendant's health [*Id.*]. Defendant has two sisters who work in the medical field and who will work with defendant to ensure his diabetes and hypertension remain under control [*Id.*]. Upon his release, defendant will also take part in the lives of, and help care for, other family members, including his other children, his mother, and his aunts [*Id.*]. All of these individuals are aware of defendant's past legal issues and will help support him as he transitions back into society [*Id.*].

Having considered the § 3553(a) factors relevant to this case, as well as the record as a whole, the Court finds that the factors weigh in favor of granting defendant's request for compassionate release. Specifically, the Court finds that reducing defendant's sentence to one of time served will result in a sentence which is sufficient, but not greater than necessary, to achieve the goals Congress has identified in both sections 3553(a) and 3582(c)(1)(A). Again, as the Court noted above, the Court does not reach this decision lightly, and the Court's decision in no way minimizes the serious nature of the defendant's past criminal conduct. However, based on the record before the Court, including but not limited to the government's lack of opposition to defendant's request, as well as the defendant's own rehabilitation efforts while incarcerated to date, the Court concludes that defendant is entitled to the relief requested.

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motions [Docs. 66, 67] are hereby **GRANTED**. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) the defendant's sentence of 262 months of imprisonment is reduced to **time served**. The previously ordered terms of supervised release[1] shall remain in effect [Doc. 51], and the Court imposes the following additional special condition of supervision:

> You shall submit your person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1) or other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer or designee. Failure to submit

---

[1] The Court notes that one of the previously imposed special conditions of supervision is that defendant participate in a program of testing and/or treatment for drug or alcohol abuse [Doc. 51 at 4]

11

Case 3:11-cr-00139-TAV-DCP Document 90 Filed 02/02/21 Page 11 of 12 PageID #: 814

to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of supervision, and the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

This Order shall not take effect until 14 days after its entry in order to allow the Bureau of Prisons time to process the defendant's release and to allow for a quarantine period. In the event that the Bureau determines that additional time is needed, the parties shall immediately notify the Court and show cause as to the need for the delay. Defendant is reminded that he is required to report to the probation office in the district in which he is released within 72 hours of release from the custody of the Bureau of Prisons [Doc. 51 at 3].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE